## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTORIA PREVATT<br>819 North Park Drive<br>Marietta, GA<br><br>                    Plaintiff,<br><br>v.<br><br>THE ISLAMIC REPUBLIC OF IRAN<br>Ministry of Foreign Affairs<br>Khomeini Avenue United Nations<br>Street Tehran, Iran,<br><br>IRANIAN ISLAMIC REVOLUTIONARY GUARD<br>CORPS  a/k/a The PASDARAN<br>Pasdaran Avenue<br>Golestan Yekom<br>Tehran, Iran,<br><br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      CIVIL ACTION NO. 02-1775<br>     Judge Royce C. Lamberth |

## AMENDED COMPLAINT FOR DAMAGES PURSUANT TO
## THE FOREIGN SOVEREIGN IMMUNITIES ACT

Plaintiff, by counsel, respectfully files this Complaint against Defendants seeking

damages arising out of the October 23, 1983 terrorist attack on the Marine Barracks in Beirut,

Lebanon.  Plaintiff Victoria Prevatt seeks judgment against Defendants the Islamic Republic of

Iran and the Iranian Ministry of Information and Security, and in support of the Complaint

Plaintiff alleges as follows:

### I.
### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§§1330(a), 1331 and 1332(a)(2).


2.      Defendants the Islamic Republic of Iran, and the Iranian Islamic Revolutionary Guard

Corps, also known as the Pasdaran, are subject to suit in the courts of the United States

pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7), and related statutes.

3.    Venue is proper in this District Court pursuant to 28 U.S.C. §1391(f)(4).

4.    Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees and agents fall within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C.A. §1605.

## II.
## THE PARTIES

5.    Plaintiff Victoria Prevatt, a resident and domiciliary of the State of Georgia, is the sister of decedent Victor Mark Prevatt, who died from injuries sustained during a terrorist attack on the Marine Barracks in Beirut, Lebanon October 23, 1983.  Subsequent to the filing of this lawsuit, Ms. Prevatt married and is now known as Victoria Prevatt Wood.

6.    Victor Mark Prevatt was a citizen of the United States of America.

7.    Defendant the Islamic Republic of Iran (hereinafter also referred to as "Iran") is a foreign state that has been designated a state supporting international terrorism within the meaning of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)) and the Foreign Assistance Act of 1961 (22 U.S.C. 2371(b)) since January 19, 1984.  The Islamic Republic of Iran provides material support and resources to defendant Hizballah, a politico-paramilitary terrorist organization operating in Lebanon.  The Islamic Republic of Iran sponsors Hizballah, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, by providing it with funding, direction and training for its terrorist activities..

2

8.    Defendant the Iranian Islamic Revolutionary Guard Corps also known as Pasdaran (hereinafter referred to as "IRGC" or "Pasdaran") is a non-traditional agency of the Islamic Republic of Iran.  The IRGC, with its own separate ministry, has evolved into one of the most powerful organizations in Iran.  The IRGC functions as an intelligence organization, both within and outside the country.  In addition, the IRGC has become a powerful military instrument for defending the Islamic fundamentalist revolution and the Islamic Republic of Iran and is dedicated to the spread of Islamic Fundamentalism throughout the world by acts of terrorism.  The IRGC is the agency through which Iran prepared and oversaw the actions relating to the bomb attack on the Marine Barracks in Beirut, Lebanon on October 23, 1983.  The IRGC, acting as an agent of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, performed acts within the scope of its agency as a conduit for the Islamic Republic of Iran's provision of funds, training and direction to defendant Hizballah for its terrorist activities in Lebanon, that caused the act of extrajudicial killings described below.

### III.
### STATEMENT OF FACTS

9.    In the summer of 1982, at the request of the Lebanese government, the United States agreed to establish a U.S. military presence in that country to serve as a peacekeeping force in the conflict between warring Moslem and Christian factions.  U.S. military forces were inserted into Lebanon on September 29, 1982, as part of a multinational peacekeeping force composed of U.S., French, Italian, and later, British troops.

10.    Initially, the United States contingent of the multinational force (USMNF) was welcomed by the local populace and provided a level of stability.  The mission of the USMNF was

3

to establish an environment that would facilitate the withdrawal of foreign military forces from Lebanon and to assist the Lebanese government and the Lebanese Armed Forces (hereinafter referred to as "LAF") in establishing control and authority over the Beirut area. However, as diplomatic efforts failed to achieve a basis for a lasting settlement, the Moslem factions came to perceive the Marines as enemies.

11. Concurrently, the Islamic Republic of Iran had begun a program of carefully planned acts of terrorism designed to destabilize governments in the Middle East and export principles of Islamic fundamentalism. Its principal agents in this regard were the Iranian Ministry of Information and Security ("MOIS") and the Pasdaran or IRGC.

12. Iran, through MOIS and the IRGC, established Hizballah in Lebanon as a terrorist organization employing tactics such as kidnapping, torture, and murder. The MOIS and the IRGC provided funding, training and equipment to Hizballah enabling it to pursue and achieve its mission of terrorism.

13. Hizballah operated as a terrorist organization in Lebanon under the name of the Islamic Jihad. Its members were trained in Iran and the Bekaa Valley in Lebanon at facilities established, operated, and supported by defendants Iran and the IRGC.

14. The presence of United States personnel in Lebanon was viewed by the government of Iran as supportive of Israel, which was closely allied with Western governments. In Iran's view, large-scale terrorist operations designed to kill Americans would affect the withdrawal of U.S. servicemen from Lebanon.

52161.1:712593:00650

15.   One of the first major acts of terrorism under the direction of Iran was the destruction of the U.S. Embassy in West Beirut, Lebanon on April 18, 1983, killing 63 people, including 17 Americans.

16.   The politico/military situation continued to deteriorate.  By August 1983, the LAF were engaged in direct conflict with faction militias and the USMNF positions at the Beirut International Airport were receiving hostile fire.  Attacks against the multinational force in the form of car bombs and sniper fire increased in frequency.  By  September the LAF were locked in combat for control of the highlands overlooking the airport, and U.S. Naval gunfire was being used in support of the LAF at Suq-Al-Gharb after determination by the National Security Council that the LAF retention of that area was essential to the security of USMNF positions at the airport.

17.   Intelligence support of the USMNF revealed a broad spectrum of threats.  Between May and November 1983, over 100 intelligence reports warning of terrorist car bomb attacks were received by the USMNF.  The reports contained little specific information as to how and when those attacks might be carried out.  From August to October 1983, the USMNF was virtually flooded with terrorist attack warnings.

18.   On October 23, 1983, a large truck loaded with explosives equivalent to 12,000 pounds of TNT crashed through the barricade of the U.S. compound at the Beirut International Airport, penetrated the front entrance to the Marine Battalion Landing Team Headquarters (HQBLT) buildings and detonated.   The explosion and the resulting collapse of the building killed 241 Americans, of which 220 were Marines; the remaining

52161.1:712593:00650

were Navy sailors and medical personnel.  For the Marines, this was the highest loss of life in a single day since D-Day on Iwo Jima in 1945.

19.    Witnesses to the bombing reported seeing a large Mercedes Benz truck traveling at a speed reportedly in excess of 35 miles per hour moving from the parking lot south of the HQBLT building through the barbed wire and concertina fencing into the main entrance of the building where it detonated at approximately 6:22 A.M.  The truck penetrated the perimeter barbed wire and concertina obstacle, passed between guard positions six and seven without being engaged; entered an open gate; passed around one sewer pipe obstacle and between two others; flattened the sergeant-of-the-guard booth; entered the interior of the lobby of the building by passing through the main entrance, and exploded.

20.    When the truck exploded it created an oblong crater measuring 39 feet by over 29 feet which was 8 feet in depth.  Because of the design of the building (it had a large covered courtyard extending from the ground floor to the roof), the explosive force of the bomb was greatly amplified.

21.    As a result of the aforementioned terrorist act described above, 241 servicemen were killed and scores of others were wounded.

22.    Victor Mark Prevatt died as a result of injuries suffered in the explosion.

## COUNT I.
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## RESTATEMENT (SECOND) OF TORTS § 46(2)

23.    Plaintiff incorporate herein by reference paragraphs 1 through 22 above as if fully set forth at length.

6

24.     Defendants, the Islamic Republic of Iran, and the Iranian Islamic Revolutionary Guard

Corps, a/k/a the Pasdaran, Hizballah caused the extrajudicial killings through the act of

terrorism described above.   In so doing, defendants intended to injure and kill those

persons present and inflict emotional distress upon their families who would learn of the

deaths of their loved ones by media broadcasts.

25.     As a direct and proximate consequence of the violent death of Victor Mark Prevatt,

Plaintiff Victoria Prevatt, suffered extraordinary grief and mental anguish, as a result of

the death of Victor Mark Prevatt entitling Plaintiff and decedent's relatives, distributees

and beneficiaries to compensatory damages for the intentional infliction of emotional

distress.

26.     For the reasons stated above, which specifically authorizes a cause of action for solatium

in civil actions for money damages resulting from terrorist acts, Defendants are jointly

and severally liable to Plaintiff Victoria Prevatt.

## COUNT II.
## ACTION FOR PUNITIVE DAMAGES

27.     Plaintiff incorporates herein by reference paragraphs 1 through 26 above as if fully set

forth at length.

28.     The actions of the Defendants, the Iranian Islamic Revolutionary Guard Corps, a/k/a the

Pasdaran, Hizballah, acting in concert to carry out their unlawful objectives, were

malicious and in willful, wanton and reckless disregard of the rights of Victor Mark

Prevatt.   The Defendants, acting individually and jointly, intended to carry out actions

which were calculated to result in the brutal murder of persons in the Marine Barracks in

7

Beirut, Lebanon where Victor Mark Prevatt was assigned. The actions sponsored by Defendants were undertaken, at such time, by those responsible individuals who were operating for, and in the service of, Defendants, and those Defendants are, therefore, vicariously liable to the Plaintiff.

29.     Defendants the Iranian Islamic Revolutionary Guard Corps, a/k/a the Pasdaran, Hizballah, are officials, agents, and/or employees of the Islamic Republic of Iran who performed acts within the scope of their offices, agencies, and/or employment, which caused the extrajudicial killings described herein.

30.     For the reasons stated above, and pursuant to 28 U.S.C.A. §1605 note, which specifically authorizes a cause of action for punitive damages in civil actions for money damages resulting from terrorist acts, Defendants are jointly and severally liable to the Plaintiff.

WHEREFORE, Plaintiff Victoria Prevatt demands that judgment be entered in her favor, individually, against Defendants the Islamic Republic of Iran, and the Iranian Islamic Revolutionary Guard Corps, a/k/a the Pasdaran, Hizballah, in the amount of three Hundred Million Dollars.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray that the Court grants judgment in their favor and against Defendants on Counts I through II, and grant Plaintiff:

A.  Compensatory damages in favor of Plaintiff as against Defendants jointly and severally, in the amount of two million seven hundred fifty thousand dollars ($2,750,000).

B.  Punitive damages in favor of Plaintiff as against defendant Islamic Revolutionary Guard Corps in the amount demanded in this Complaint;

8

C.  Reasonable costs and expenses;

D.  Reasonable attorneys' fees; and

E.  Such other and further relief as the Court may determine to be just and equitable under the circumstances.

Dated:  October 2?, 2004

<div style="margin-left:40%">

Respectfully submitted,

_____

John J. McDermott
Hall, Estill, Hardwick, Gable, Golden & Nelson
1120 20th Street NW
Suite 700 North
Washington, DC 20036

</div>

52161.1:712593:00650