UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VICTORIA PREVATT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 02-1775 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case arises from the October 23, 1983 terrorist attack on the Marine barracks in Beirut, Lebanon. Plaintiff, the sister of a serviceman killed in the bombing, alleges that defendants are liable for damages resulting therefrom because they provided material support and assistance to Hezbollah, the terrorist organization that orchestrated the bombing. As such, defendants are subject to suit under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7).

In plaintiff's initial complaint, filed on September 9, 2002, she brought suit on her own behalf, as well as on behalf of her brother's estate, against four named defendants: the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security (the "MOIS"), the Iranian Islamic Revolutionary Guard Corps (the "IRGC"), and Hizballah. On July 14, 2003, after service on three defendants – Iran, the MOIS and the IRGC – was completed through diplomatic channels and those defendants failed to respond or enter an appearance, default was entered against them. An evidentiary hearing on the issue of liability was held on January 16, 2004. As

to damages, a court-appointed special master filed a report on December 1, 2003. Plaintiff submitted her Proposed Findings of Fact & Conclusions of Law on May 20, 2004.

On December 15, 2004, in light of recent decisions by the Court of Appeals for this Circuit, plaintiff submitted, upon leave of the Court, an amended complaint reflecting that the suit was brought solely in her personal capacity against just two of the initially named defendants, Iran and the IRGC, and asserted claims based on intentional infliction of emotional distress and punitive damages. Despite plaintiff's attempts, she was unable to serve the amended complaint on either defendant. This Court finds that service of the amended complaint is not necessary. As compared to the initial complaint, the amended complaint removed the designation of plaintiff as administrator of her brother's estate, deleted the wrongful death count, and changed the solatium count to an intentional infliction of emotional distress count. Even were these changes characterized as substantive, Iran and the IRGC had fair notice of the allegations and relief sought, because the amended complaint simply deleted some of the references and information that was contained in the initial complaint. *See Dammarell v. Islamic Republic of Iran*, 370 F. Supp. 2d 218, 225 (D.D.C. 2005) (Bates, J.) (noting that only "additions to a complaint [which are] substantial" might warrant the service of an amended complaint). Accordingly, this Court will not require plaintiff to serve the amended complaint.

As to the effect of recent changes in law, the Court directed plaintiff to brief the effect of intervening case law, and she filed a memorandum to that effect on January 3, 2006. She also subsequently submitted, on January 13, 2006, amended Proposed Findings of Fact & Conclusions of Law.

Plaintiff's liability claims are supported by the evidence presented in the evidentiary

hearing, including this Court's judicial notice of findings made in a prior case arising from the same attack, *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003) (Lamberth, J.). Plaintiff's personal damages claims are supported by the Report of the Special Master, which includes a deposition of plaintiff and other documentary evidence. Based on all of the evidence presented, the Court makes the following findings of fact and conclusions of law and will, consistent with them, enter default judgment in favor of plaintiff and against defendants Iran and the IRGC.

## **FINDINGS OF FACT**

1. Plaintiff Victoria Prevatt-Wood was born in Columbus, Georgia. (Victoria Prevatt-Wood Dep. 5.) She is an American citizen who is domiciled in Georgia. (*Id.* at 4, 5.)

2. Ms. Prevatt-Wood's brother, Victor Mark Prevatt ("Mark Prevatt"), was also a United States citizen. On October 23, 1983, he was a member of the United States Marine Corps stationed in Beirut, Lebanon. (Victoria Prevatt-Wood Dep. 8-9.)

3. On October 23, 1983, members of the terrorist group Hezbollah carried out an attack on the Marine barracks in Beirut, Lebanon. *Peterson*, 264 F. Supp. 2d at 56. Mark Prevatt was killed in the attack.

4. The attack was the culmination of careful planning by defendant the IRGC and Hezbollah, *Peterson*, 264 F. Supp. 2d at 55-56, acting on directions by defendant Iran, *id.* at 54.

5. Defendant Iran "is a foreign state and has been designated a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C.A. § 2405(j)) continuously since January 19, 1984." *Flatow v. Islamic Republic of Iran*, 999. F. Supp.

1, 11, ¶ 19 (D.D.C. 1998) (Lamberth, J.). Iran was designated a state sponsor of terrorism largely because of the October 23, 1984 attack. Kenneth Katzman, Iran: Current Developments and U.S. Policy, Congressional Research Service, January 14, 2000, at 6 (noting that, "based largely on evidence of Iran's involvement in the October 1983 bombing of the U.S. Marine barracks in Lebanon," Iran was designated as a state sponsor of terrorism on January 19, 1984.).

6. "Hezbollah is largely under Iranian orders. It's almost entirely acting . . . under the order of the Iranians and being financed almost entirely by the Iranians." *Peterson*, 264 F. Supp. 2d at 51.

7. "[I]t is beyond question that Hezbollah and its agents received massive material and technical support from the Iranian government." *Id.* at 58.

8. Defendants Iran and the IRGC conspired to provide material support and resources to Hezbollah, a terrorist organization, within the meaning of 28 U.S.C. § 1605(a)(7), which caused the death of Mark Prevatt.

9. Mark Prevatt's death was caused by a willful and deliberate act of extrajudicial killing because the explosion was caused by a bomb that was deliberately driven into the barracks by a member of Hezbollah acting under the direction of defendants Iran and the IRGC.

10. Ms. Prevatt-Wood was eight years old at the time of her brother's death. (Special Master's Rep. 2.) Mark Prevatt was eleven years older than Ms. Prevatt-Wood. (Victoria Prevatt-Wood Dep. 5.) Mark Prevatt, Victoria Prevatt-Wood and another brother grew up together with their mother in Columbus, Georgia. (*Id.* at 6.)

11. After their parents divorced, Mark Prevatt assumed a figurehead position in the house. (*Id.* at 6-7.) He took on a fatherly role with respect to his younger siblings. (*Id.* at 7.)

12. At the age of 17, Mark Prevatt enlisted in the United States Marine Corps. (*Id.* at 8-9.) While in the Marines, Mark Prevatt corresponded with his family, occasionally by telephone, but more often by handwritten letters. (Special Master's Rep. 2; Victoria Prevatt-Wood Dep. 10-15.)

13. Victoria Prevatt-Wood first heard about the attack from the news as she was getting ready for school on October 23, 1983. (Victoria Prevatt-Wood Dep. 17.) At her mother's direction, she went to school, but was called home later that day. (*Id.* at 17-18.)

14. In the aftermath of the attack, Victoria Prevatt-Wood remembers her life being put on overwhelmed with news of the attack. (*Id.* at 18-20.) The family closely followed media reports, and she was unable to leave the house or have friends over. (*Id.* at 18-19.)

15. For an extended period of time, the family did not know whether Mark Prevatt had been killed in the attack. (*Id.* at 19-20.) Over about three weeks, the family was told conflicting reports of whether Mark Prevatt might have survived or whether it was simply a matter of identifying his remains. (*Id.* at 20-22.)

16. During this period of time, Victoria Prevatt-Wood remembers the adults around her as behaving very emotionally and erratically. (Victoria Prevatt-Wood Dep. 22.) She was confused and distressed by her parents' anger, grief, guilt, depression and pain. (Victoria Prevatt-Wood Journal (Ex. 18) at 1-2.)

17. Every year, Victoria Prevatt-Wood visits her brother's gravesite on his birthday and on the anniversary of the attack. (Victoria Prevatt-Wood Dep. 32.) The entire family

reserves the anniversary of the attack as a special date, during which they reconnect with one another to remember and comfort each other, and no other events are scheduled. (*Id.* at 32-33; Special Master's Rep. 2; Victoria Prevatt-Wood Journal (Ex. 19) at 1-2.)

18. The death of her brother significantly impacted Victoria Prevatt-Wood's life. (Victoria Prevatt-Wood Dep. 27.) She describes his death as the "defining event" of her childhood. (Victoria Prevatt-Wood Journal (Ex. 18) at 1.) Even now, more than twenty years later, it continues to affect her relationships with her parents and her own perception of her life. (*Id.*) She feels as though she lost part of her mother, father and other brother as well, because each has been irrevocably changed by Mark Prevatt's death. (Victoria Prevatt-Wood Journal (Ex. 19) at 1-2.)

19. Victoria Prevatt-Wood describes feeling cheated by the loss of her brother. (*Id.*) She imagines the friendship that she would have with Mark Prevatt were he still living today. (*Id.*) He is constantly in her thoughts and she frequently visits his gravesite. (*Id.*)

## CONCLUSIONS OF LAW

**I.      Legal Standard for FSIA Default Judgment**

Under the Foreign Sovereign Immunities Act, "[n]o judgment by default shall be entered by a court of the United States or of a state against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232-33 (D.C. Cir. 2003), *cert. denied*, 542 U.S. 915 (2004). "In evaluating plaintiffs' proof, the court may accept as true the plaintiffs' uncontroverted evidence." *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 268 (D.D.C. 2003) (Urbina, J.) (internal citations omitted). Plaintiffs' evidence may take the form of

sworn affidavits. *Id.* (citing *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002) (Lamberth, J.)).

## II.     Jurisdiction

The Foreign Sovereign Immunities Act provides the sole basis for asserting jurisdiction over foreign sovereigns in the United States. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-35 (1989). The "state-sponsored terrorism" exception provides that a foreign sovereign will not be immune to suit in U.S. courts where:

> money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605(a)(7). To subject a foreign sovereign to suit under section 1605(a)(7), a plaintiff must demonstrate: (1) that the foreign sovereign was designated by the State Department as a "state sponsor of terrorism" or was designated as such as a result of the act; (2) that the victim or claimant was a U.S. national at the time the acts took place; and (3) that the foreign sovereign engaged in conduct that falls within the ambit of the statute, in this case, providing material support or resources for an act of extrajudicial killing.

Each of the requirements has been satisfied in this case. Defendant Iran has been designated a state sponsor of terrorism continuously since January 19, 1984. *See* 31 C.F.R. § 596.201 (2001); *Flatow*, 999 F. Supp. at 11, ¶ 19. While it was not so designate on the date of the attack, its designation as such shortly thereafter was partly a result thereof. Kenneth Katzman, Iran: Current Developments and U.S. Policy, Congressional Research Service, January

14, 2000, at 6. The victim, Mark Prevatt, was a United States national at the time of the attack. Iran's support of an entity that committed an extrajudicial killing squarely falls within the ambit of the statute.

The IRGC, the other defendant in this case, is considered to be a division of state of Iran, *Roeder*, 333 F.3d at 234, and thus the same determinations apply to its conduct. *See Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 116 (D.D.C. 2005) (Bates, J.) (analogizing the IRGC to the MOIS for purposes of liability, and concluding that both must be treated as the state of Iran itself). Personal jurisdiction over a non-immune foreign sovereign exists so long as service of process has been made under Section 1608 of the FSIA. *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 298 (D.D.C. 2003) (Lamberth, J.). Such service has been made, and this Court has *in personam* jurisdiction over Iran and the IRGC.

### III.     Liability

#### A.     Proper Causes of Action Under the FSIA

Once a foreign state's immunity has been lifted under Section 1605 and jurisdiction is proper, Section 1606 provides that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. Section 1606 acts as a "pass-through" to substantive causes of action against private individuals that may exist in federal, state or international law. *Dammarell v. Islamic Republic of Iran*, Civ. A. No. 01-2224, 2005 WL 756090, at *8-10, 2005 U.S. Dist. LEXIS 5343, at *27-32 (D.D.C. Mar. 29, 2005) (Bates, J.).

In this case, state law provides a basis for liability. First, the law of the United States applies rather than the law of the place of the tort or any other foreign law. The United States has

a "unique interest" in having its domestic law apply in cases involving terrorist attacks on United States citizens, particularly when, as here, the attack was directed at a United States facility and government personnel.  *Dammarell*, 2005 WL 756090, at *20, 2005 U.S. Dist. LEXIS 5343, at *63.

Having determined that the laws of the United States shall apply, the Court must next determine which state's law to apply.  As the forum state, District of Columbia choice of law rules guide this analysis.  Under District of Columbia choice of law rules, courts employ a refined government interest analysis under which courts "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review."  *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 41 (D.C. 1989) (citations and internal quotations omitted).  This test typically leads to the application of the law of plaintiff's domicile, as the state with the greatest interest in providing redress to its citizens.  *Dammarell*, 2005 WL 756090, at * 20-21, 2005 U.S. Dist. LEXIS 5343, at *66-67 (citing REST. (3D) FOREIGN RELATIONS LAW § 402(3) (1987)).  Here, plaintiff Victoria Prevatt-Wood is domiciled in Georgia, and there is no other state with a greater interest in applying its law.

Upon a determination that Georgia law shall apply, the Court must next discuss whether that law provides causes of action for the claims at issue.  As required by 28 U.S.C. § 1606, Georgia law provides a cause of action against private individuals for the kind of acts that defendants allegedly committed.  Plaintiff asserts a claim for intentional infliction of emotional distress, a tort for which private individuals may face liability.  The Court's next task is to determine whether plaintiff has shown liability and damages for these claims under the laws of

9

Georgia.

### B.        Vicarious Liability

The basis of defendants' liability is that they provided material support and resources to Hezbollah, which personally completed the attack.  One may be liable for the acts of another under theories of vicarious liability, such as conspiracy, aiding and abetting and inducement.  This Court finds that civil conspiracy provides a basis of liability for Iran and the IRGC and thus declines to reach the issue of whether they might also be liable on the basis of aiding and abetting and/or inducement.

A civil conspiracy exists under Georgia law where plaintiff shows that "two or more persons, acting in concert, engaged in conduct that constitutes a tort."  *Miller v. Lomax*, 596 S.E.2d 232, 242 (Ga. App. 2004).  *See also Summer-Minter & Assocs., Inc. v. Giordano*, 184 S.E.2d 152, 154 (Ga. 1971) (citing *Vanhitch v. Alverson*, 183 S.E. 105 (Ga. App. 1935)).  The agreement may be inferred from conduct.  *McCulley v. Dunson*, 254 S.E.2d 877, 879 (Ga. App. 1979) ("[T]o show conspiracy . . . it need not appear that the parties met together either formally or informally, and entered into any explicit or formal agreement; nor is it essential that it should appear that either by words or by writings they formulated their unlawful objects.") (quotations and internal citations omitted).  Rather, it "is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design."  *Id.*

Here, it has been established that Iran, the IRGC and Hezbollah agreed to commit the attack on the Marine barracks.  *See Peterson*, 264 F. Supp. 2d at 54-56.  Given the extensive material support and resources Iran and the IRGC provided to Hezbollah, *id.*, this Court finds

that the three were acting in concert within the meaning of Georgia civil conspiracy law. Therefore, the elements of civil conspiracy are established between the defendants in this case and the actual perpetrators of the attack.

### C.     Intentional Infliction of Emotional Distress

Plaintiff Victoria Prevatt-Wood claims that defendants are vicariously liable for intentional infliction of emotional distress. Under Georgia law, the elements of intentional infliction of emotional distress are (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *See Everett v. Goodloe*, 602 S.E.2d 284, 292 (Ga. App. 2004).

In addition, a plaintiff claiming intentional infliction of emotional distress must show that the act was "directed towards the plaintiff." *See Ryckeley v. Callaway*, 412 S.E.2d 826, 827 (Ga. 1992); *Strickland v. Hodges*, 216 S.E.2d 706, 709 (Ga. App. 1975). When the harm complained of results from learning about the death of a loved one, plaintiff must show that the act was directed not only at the physical well-being of the victim but also toward the emotional well-being of the family. *Dammarell*, 404 F. Supp. 2d 261, 280-81 (interpreting Georgia law of intentional infliction of emotional distress).

The elements are satisfied in this case. The evidence demonstrates that defendants' actions in facilitating the Marine barracks bombing were intentional, malicious, extreme and outrageous, and that their conduct was the proximate cause of severe emotional distress experienced by Victoria Prevatt-Wood following the murder of her brother.

It should be noted that, under Georgia law, actual physical injury is not necessary to

establish the elements of intentional infliction of emotional distress. *Lee v. State Farm Mut. Ins. Co.*, 533 S.E.2d 82, 84 (Ga. 2000) (noting that "there is not the necessity of an impact when the alleged conduct directed toward the plaintiff is malicious, wilful or wanton") (citing *Ryckeley*, 412 S.E.2d at 828).

### D.     Compensatory Damages

As a result of the wrongful conduct of defendants Iran and the IRGC, plaintiff Victoria Prevatt-Wood has suffered, and will continue to suffer, pain and mental anguish. Since a "foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606, plaintiff is entitled to the typical array of damages that may be awarded against tortfeasors in Georgia.

In determining the appropriate compensatory damages for plaintiff's pain and suffering, this Court is guided not only by prior decisions awarding damages for pain and suffering, but also by those which awarded damages for solatium. *Cf. Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001) (Jackson, J.) (noting that, in an intentional homicide case, "solatium appears in any event to be indistinguishable from the intentional infliction of emotional distress"); *see also Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (Friedman, J.) ("In the context of FSIA cases, this Court has recognized the claim of solatium as . . . indistinguishable from the claim of intentional infliction of emotional distress."). While intervening changes in law have ruled many cases' reliance on federal common law improper, such findings need not disturb the accuracy of the analogy between solatium and intentional infliction of emotional distress.

Compensatory damages awards to family members of the victim of a terrorist attack are

generally determined by the nature of the relationship. Spouses typically receive greater damage awards than parents, who, in turn, receive greater awards than siblings. *Compare, e.g., Anderson v. Islamic Republic of Iran,* 90 F. Supp. 2d 107, 113 (D.D.C. 2000) (Jackson, J.) (awarding $10 million to the wife of a hostage and torture victim); *Cicippio*, 18 F. Supp. 2d at 70 (same), *with Eisenfeld*, 172 F. Supp. 2d at 8 (awarding $5 million each to the parents and $2.5 million each to the siblings of victims of a suicide bombing on a passenger bus); *see also Flatow*, 999 F. Supp. at 31 (awarding parents each $5 million and siblings each $2.5 million of victim who was killed in the same passenger bus bombing in which Seth was injured).

In recognition of the lifelong loss of a relationship with the victim, families of victims who have died are typically awarded greater damages than families of victims who remain alive. *See, e.g., Jenco*, 154 F. Supp. 2d at 38 (relying on this distinction in granting awards of $1.5 million to siblings of a kidnaping victim who was eventually safely returned). While the loss suffered by the plaintiffs in these cases is undeniably difficult to quantify, courts typically award approximately $2.5 million to a plaintiff whose sibling was killed and $1.5 million to a plaintiff whose sibling was severely injured, but not killed. The awards seek to recognize a plaintiff's emotional distress immediately after the attacks as well as the continued suffering that results from the loss of a normal relationship, or any relationship at all, with one's sibling.

Applying these considerations to the facts of this case, this Court finds that Ms. Prevatt-Wood suffered a great deal of mental anguish in the days surrounding the attacks. For several days, the family did not know whether Mark Prevatt had been killed in the bombing. Victoria Prevatt-Wood, a young child at the time, witnessed her parents' grief and emotional turmoil. As she has grown older, she has continued to mourn the loss of her brother, and mourn the loss of

the friendship and experiences they might have shared had he survived. Taking all of the relevant factors into account, this Court finds that Victoria Prevatt-Wood is entitled to an award for pain and suffering in the amount of $2,500,000.

### E.     Punitive Damages

Punitive damages are not allowed against a foreign state.[1] Similarly, punitive damages may not be entered against divisions of the foreign state that are considered the state itself, rather than an agency or instrumentality thereof.[2] To determine whether an entity is to be considered the state itself, and thus not subject to punitive damages, a court must evaluate the core functions of the entity. *Roeder*, 333 F.3d at 234. If they "are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state." *Id.*

Plaintiff Victoria Prevatt-Wood concedes that punitive damages are not available against Iran, but argues that they are available against the IRGC, as an agent or instrumentality of Iran. There is no evidence, however, that the IRGC's functions are commercial rather than governmental. Rather, the IRGC's primary function is paramilitary, and "a nation's armed forces are clearly on the governmental side." *Id.* Other cases in this Circuit have arrived at the same conclusion with regard to the IRGC. *See Holland, et al. v. Islamic Republic of Iran, et al.*, Civ. A. No. 01-1924 (CKK) (D.D.C. Oct. 31, 2005) (Kotelly, J.); *Salazar*, 370 F. Supp. 2d at 116; *Welch v. Islamic Republic of Iran*, 2004 U.S. Dist. LEXIS 19512, 2004 WL 2216534 (D.D.C.

---

[1] 28 U.S.C. § 1606 ("[A] foreign state . . . shall not be liable for punitive damages"); *Dammarell*, 2005 WL 3418304, at *5, 2005 U.S. Dist. LEXIS 32618, at *14-15; *Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 243 (D.D.C. Mar. 24, 2005) (Urbina, J.); *Kapar v. Islamic Republic of Iran*, Civ. A. No. 02-78 (HHK), at 19 n.3 (D.D.C. Sept. 22, 2004) (Kennedy, J.).

[2] *Roeder*, 333 F.3d at 234 (considering the MOIS to be the state of Iran itself and thus not subject to punitive damages).

Sept. 27, 2004) (Kay, J.).  Therefore, this Court lacks the authority to grant plaintiff's request for punitive damages.  It shall accordingly be denied as to all defendants.

## CONCLUSION

This Court takes note of plaintiff's courage and steadfastness in pursuing this litigation and her effort to take action to deter more tragic suffering of innocent Americans at the hands of terrorists.  Her efforts are to be commended.

A judgment consistent with these findings shall issue this date.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 27, 2006.